UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **LISA HUNTER** <br> 9623 Valley Ranch East Apt. 2133 <br> Irving, TX 75063 | : <br> : <br> : <br> : | Case No. 3:23-cv-267 <br><br> Judge |
| **Plaintiff,** | : <br> : | |
| v. | : <br> : | |
| **KETTERING MEDICAL CENTER** <br> 1 Prestige Place, Suite 300 <br> Miamisburg, OH 45342 | : <br> : <br> : <br> : | |
| and | : <br> : | |
| **KETTERING ADVENTIST HEALTHCARE** <br> 1 Prestige Place, Suite 300 <br> Miamisburg, OH 45342 | : <br> : <br> : <br> : <br> : | |
| **Defendants.** | : | |

_____

### COMPLAINT AND JURY DEMAND
_____

Plaintiff Lisa Hunter, for her Complaint against Defendants Kettering Medical Center and Kettering Adventist Healthcare, states as follows:

### I. PRELIMINARY STATEMENT

1. This is a civil rights action arising out of Plaintiff Lisa Hunter's employment with Defendants at Soin Medical Center. Ms. Hunter alleges that she was discriminated against and terminated because of her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.,* and the Ohio Civil Rights Act, Ohio Rev. Code 4112.01, *et seq.*

2. Ms. Hunter seeks relief for the aforementioned acts and/or omissions in the form of compensatory damages for her economic injuries, compensatory damages for her non-economic injuries, equitable relief in the form of reinstatement or front pay, and punitive damages. Finally, Ms. Hunter seeks payment of her reasonable attorney fees and costs.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 because Ms. Hunter's claims arise under federal law, 42 U.S.C. § 12101, *et seq*. This Court may assume supplemental jurisdiction over Ms. Hunter's claims under Ohio law pursuant to 28 U.S.C. § 1367 because her state law claims arise from the same case or controversy as her federal claims.

4. Venue with this Court is appropriate because the acts complained of herein occurred within the judicial district of the Southern District of Ohio.

## III. ADMINISTRATIVE HISTORY

5. On November 10, 2022, Ms. Hunter filed a charge of discrimination (No. 473-2023-00322) with the Equal Employment Opportunity Commission ("EEOC") against SORTA, alleging disability discrimination. On June 27, 2023, the EEOC issued Ms. Hunter a Notice of Right to Sue.

6. Ms. Hunter has timely filed this claim within 90 days of receiving her first Notice of Right to Sue.

## IV. PARTIES

7. Plaintiff Lisa Hunter is a United States citizen and a resident of Irving, Texas. Defendants employed Ms. Hunter as a registered nurse. Ms. Hunter is disabled as that term is defined by the ADA and Ohio Civil Rights Act.

8. Defendant Kettering Medical Center is an Ohio corporation with hits principal place of business in Kettering, Ohio. Kettering employed Ms. Hunter and is an employer as that term is defined in the ADA and the Ohio Civil Rights Act.

9. Defendant Kettering Adventist Healthcare is an Ohio corporation with hits principal place of business in Kettering, Ohio. Kettering employed Ms. Hunter and is an employer as that term is defined in the ADA and the Ohio Civil Rights Act.

10. Defendants jointly employed Ms. Hunter and are referred to herein collectively as "KMC."

## V. STATEMENT OF THE CASE

11. Defendants hired Ms. Hunter on or about September 15, 2021 to serve as a registered nurse in the med-surg department at Soin Medical Center, which is owned and operated by KMC.

12. Ms. Hunter suffers from a hearing impairment that substantially limits the normal operation of her auditory and neurological systems, and substantially limits the normal life activity of hearing.

13. Upon accepting the position, Ms. Hunter scheduled a meeting with her supervisor, Carolina Fogle, during which Ms. Hunter informed Ms. Fogle about her hearing impairment. Specifically, Ms. Hunter relayed to Ms. Fogle that she has less than 50% hearing in both ears. She informed Ms. Fogle that she wears hearing aids, but that she still relies on lip reading to some degree. As a result, Ms. Hunter explained, others wearing masks limits her ability to read lips.

14. Ms. Fogle indicated that Ms. Hunter hearing impairment would pose no problem for her employment. Ms. Fogle further offered that the nurses use radio communication

devices and that KMC would order a headset for Ms. Hunter to use so that she could hear what was being said over the radio.

15. Thereafter, Ms. Fogle took several leaves of absence, leaving Ms. Hunter to report to James Hoffman, a new management nurse.

16. KMC never provided Ms. Hunter a headset to use with the Vocera system.

17. Ms. Hunter ordered three different headsets on her own, but none worked with the Vocera system.

18. Additionally, the lapel microphone KMC provided to Ms. Hunter (in lieu of the headset) interfered with the functionality of her hearing aids.

19. While Ms. Hunter was struggling to use the Vocera system, several of her coworkers began giving her a hard time over her hearing impairment. Such behavior included calling Ms. Hunter several times while she was with a patient—knowing that she had trouble understanding the radio communications and had to interrupt her patient visit.

20. Ms. Hunter repeatedly asked that her coworkers and Mr. Hoffman communicate with her in alternate ways, such as face-to-face conversations, writing, texting, or the telephone system, because she did not yet have a functioning headset for the Vocera system. They regularly refused to do so.

21. Ms. Hunter met with Mr. Hoffman to discuss her ongoing struggle to use the Vocera system as a result of not being provided a headset. Mr. Hoffman dismissed her concerns.

22. On or about November 26, 2021, Ms. Hunter temporarily lost all hearing in her left ear. She notified Mr. Hoffman regarding her sudden hearing loss and asked to be relieved

from duty for the remainder of the shift. Mr. Hoffman agreed to release her and directed her to discuss the matter with KMC's human resources department.

23. Ms. Hunter's otolaryngologist, Dr. Peter Michaelson, diagnosed her with sudden sensorineural hearing loss. The audiologist prescribed medication and provided Ms. Hunter with a note excusing her from work until December 6, 2021.

24. On or about December 3, Mr. Hoffman called Ms. Hunter to discuss her return to the floor. He offered clear masks as a potential solution to the communication difficulties. Ms. Hunter told Mr. Hoffman that she would require additional accommodations in order to return to work to facilitate clear and concise communication.

25. Mr. Hoffman directed Ms. Hunter to contact KMC's employee health department. Ms. Hunter did so.

26. Ms. Hunter spoke to Nancy in KMC's employee health department. Ms. Hunter explained her hearing impairment and indicated that she needed accommodations. She asked Nancy what sort of accommodations would be feasible, and mentioned that she had been previously promised a headset to work with the Vocera system.

27. Nancy told Ms. Hunter that the only accommodation she could provide to Ms. Hunter was to help her find a job in a basement.

28. Ms. Hunter reached out to Ms. Fogle to share her concerns about her experience with Nancy in employee health. Ms. Fogle suggested that Ms. Hunter reach out to Soin Medical Center's separate employee health department. Ms. Hunter did so.

29. Upon contacting Soin's employee health department, she connected with Cris Gozum. Ms. Hunter explained her hearing impairment and that she had previously spoken with Ms. Fogle about a headset, but that she had not received a headset.

30. Ms. Gozum said that she would look into the matter and get back to Ms. Hunter.

31. On December 5, 2021, Ms. Hunter reached out to Mr. Hoffman about the clear masks and also indicated she was unsure if she could work on the floor given her ongoing hearing deficit in her left ear. Mr. Hoffman responded the next day and said that she could call off if she needed to do so. He also indicated that he had not yet checked on the availability of clear masks.

32. On or about December 6, 2021, Ms. Hunter provided the note from Dr. Hunter indicating that she needed an accommodation in order to work due to hearing loss.

33. On December 9, 2021, Ms. Hunter met with another representative in employee health, Amy Carter. Ms. Carter instructed Ms. Hunter that she search for temporary positions that did not involve patient care.

34. Ms. Carter also informed Ms. Hunter that she needed to provide a note from her medical provider listing her work restrictions. Ms. Hunter responded that she did not have any work restrictions, she just needed an accommodation for her hearing loss. Amy insisted that KMC needed a list of Ms. Hunter's work restrictions despite Ms. Hunter having no specific work restrictions.

35. Ms. Hunter then shared that conversation with Ms. Gozum. Ms. Gozum instructed Ms. Hunter to not seek out other positions.

36. On December 16, 2021, Ms. Gozum informed Ms. Hunter that she could not perform any patient care and that KMC had placed her on medical leave.

37. Thereafter, Ms. Hunter participated in a conference call with Mr. Hoffman and Ms. Gozum. Ms. Hunter proposed several possible accommodations: 1) clear and concise communications; 2) a headset that worked with the Vocera system; and 3) written communications (such as a copy of the charge nurse's pre-shift summary). Mr. Hoffman

and Ms. Gozum did not commit to providing any of the accommodations, nor did they indicate that any of the proposed accommodations were not possible.

38. Ms. Gozum informed Ms. Hunter that she needed to contact Sun Life, a third party benefits administrator, to request accommodations.

39. Ms. Hunter contacted Sun Life. Sun Life then told Ms. Hunter that Sun Life does not process ADA accommodation requests for KMC.

40. Ms. Hunter then contacted Ms. Gozum again and informed her that Sun Life did not process ADA accommodation requests.

41. Ms. Gozum then denied instructing Ms. Hunter to contact Sun Life.

42. KMC continued to insist that Ms. Hunter provide a letter from her physician containing a list of her work restrictions. Ms. Hunter continued to inform KMC that she had no restrictions, but that she needed accommodations due to her hearing impairment.

43. Ms. Hunter discussed the matter with Dr. Michaelson. He agreed that Ms. Hunter did not have any restrictions. Dr. Michaelson further indicated that he could not provide a list of potential accommodations without knowing what sort of accommodations KMC was able or willing to provide.

44. Ms. Hunter presented a letter dated January 12, 2022 from Dr. Michaelson indicating that Ms. Hunter had no restrictions to the employee health department.

45. Ms. Hunter then spoke with Ms. Gozum's supervisor, Matt Glenn. Mr. Glenn refused to discuss possible accommodations with Ms. Hunter and informed her that she was not entitled to any accommodations unless she had work restrictions.

46. Mr. Glenn and Ms. Gozum gave Ms. Hunter two choices: 1) return to her prior position without any accommodations; or 2) look for another position within KMC.

47. Ms. Hunter explained that she could not perform her prior job without accommodations for her hearing impairment.

48. Thereafter Ms. Hunter sought several positions within KMC, ultimately applying for approximately 25 open positions. KMC did not select her for any.

49. Ms. Hunter remained on an involuntary, unpaid leave of absence until April 25, 2022. At that time, KMC terminated Ms. Hunter. KMC's stated reason for terminating Ms. Hunter was that she refused to return to her prior position without accommodation.

50. KMC terminated Ms. Hunter because of her disability and denied her an accommodation for her disability.

51. As a direct and proximate result of Defendants' unlawful actions, Ms. Hunter has suffered and continues to suffer economic injuries in the form of lost pay and benefits, as well as non-economic injuries, including emotional distress and pain and suffering.

## VI. STATEMENT OF THE CLAIMS

### Count 1: Failure to Accommodate
### (Americans with Disabilities Act and Ohio Rev. Code § 4112.02)

52. Ms. Hunter incorporates the previous paragraphs as if fully rewritten herein.

53. Ms. Hunter suffers from a hearing impairment that substantially limits the normal operation of her auditory and neurological systems, and substantially limits the normal life activity of hearing.

54. Ms. Hunter requested several accommodations that would have allowed her to perform her original nursing position. She also requested a transfer to a different position. KMC denied all such requests.

55. Ms. Hunter was qualified to perform her position and/or several open positions with or without a reasonable accommodation.

8

56. The accommodations Hunter requested were reasonable.

57. Providing Ms. Hunter with an accommodation would not unduly burden KMC.

58. Defendant did not propose a reasonable, alternative accommodation that would allow Ms. Hunter to perform the essential functions of her position.

59. As a result of Defendant's illegal actions, Ms. Hunter has suffered damages including lost wages and emotional distress.

60. Defendant acted with malice and a conscious disregard for Ms. Hunter's federally protected rights.

## Count 2: Disability Discrimination
### (Americans with Disabilities Act and Ohio Rev. Code § 4112.02)

61. Ms. Hunter incorporates the previous paragraphs as if fully rewritten herein.

62. Ms. Hunter suffers from a hearing impairment that substantially limits the normal operation of her auditory and neurological systems, and substantially limits the normal life activity of hearing.

63. Defendant was aware of Ms. Hunter's disability.

64. Defendant terminated Ms. Hunter because of her disability.

65. As a result of Defendant's illegal actions, Ms. Hunter has suffered damages including lost wages and emotional distress.

66. Defendant acted with malice and a conscious disregard for Ms. Hunter's federally protected rights.

## Count 3: Retaliation
### (Americans with Disabilities Act and Ohio Rev. Code § 4112.02)

67. Ms. Hunter incorporates the previous paragraphs as if fully rewritten herein.

68. Ms. Hunter suffers from a hearing impairment that substantially limits the normal operation of her auditory and neurological systems, and substantially limits the normal life activity of hearing.

69. Ms. Hunter engaged in protected activity when she requested several accommodations.

70. Defendant was aware of Ms. Hunter's protected activity.

71. Defendant terminated Ms. Hunter because of her protected activity.

72. As a result of Defendant's illegal actions, Ms. Hunter has suffered damages including lost wages and emotional distress.

73. Defendant acted with malice and a conscious disregard for Ms. Hunter's federally protected rights.

**PRAYER FOR RELIEF**

Wherefore, Ms. Hunter demands judgment against KMC as follows:

1. An award of compensatory damages for all economic damages suffered by Ms. Hunter in an amount to be determined at trial;

2. An order reinstating Ms. Hunter to an acceptable position, inclusive of all pay increases and benefits to which she would have been entitled had she not been terminated, or in the alternative, an award of front pay;

3. An award of compensatory damages for all noneconomic damages suffered;

4. An award of punitive damages;

5. An award of Ms. Hunter's reasonable attorney fees and costs; and

6. An award of any other relief in law or equity to which Ms. Hunter is entitled.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
bbutler@mezibov.com

*Counsel for Plaintiff Lisa Hunter*

## JURY DEMAND

Plaintiff Lisa Hunter demands a jury trial to resolve all issues of fact related to her Complaint.

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)